UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 15-02562 PA (PLAx) | Date | July 1, 2020 |
|---|---|---|---|
| Title | Dolores Press, Inc. v. Patrick Robinson, et al. | | |

| Present: The Honorable | PERCY ANDERSON, UNITED STATES DISTRICT JUDGE | |
|---|---|---|
| T. Jackson | Not Reported | N/A |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| None | None |

**Proceedings:**   MOTION FOR SUMMARY JUDGMENT

Before the Court is a Motion for Summary Judgment filed by defendants Doc's Dream, Inc. ("Doc's Dream"), Truth Seekers, Inc., Patrick Robinson, and Bobbie Jones (jointly "Defendants"). (Dkt. No. 141 ("Mot.").) Plaintiffs Dolores Press, Inc. ("Dolores Press") and Melissa Scott (jointly "Plaintiffs") filed an Opposition (Dkt. No. 151 ("Opp.")) and Defendants filed a Reply (Dkt. No. 155.) Pursuant to Rule 78 of the Federal Rules of Civil Procedure and Local Rule 7-15, the Court finds this matter appropriate for decision without oral argument. The hearing calendared for June 29, 2020 is vacated and the matter taken off calendar.

**I.    Factual and Procedural Background**

As stated in prior District Court and Ninth Circuit Opinions[1] issued in this case, the following underlying facts are undisputed. Dr. Eugene Scott ("Dr. Scott") worked as an ordained minister for nearly half a century, the last 35 years as the pastor of the Wescott Christian Center and Faith Center in Glendale, California. In 1983, Dr. Scott launched the first 24-hour-a-day religious television network, reaching audiences throughout North America. Dr. Scott was the author and copyright owner of a number of audiovisual recordings of his religious teachings (his "Works"). In 1995, he licensed plaintiff Dolores Press to distribute his Works to the public.

Beginning in the late 1990s, Dr. Scott distributed his Works for free on his website. Dr. Scott expressed that publishing his Works on his websites was aimed to disseminate his Works broadly, and that he expected his Works "would stay there until Jesus comes." Dr. Scott encouraged the download, reproduction, and redistribution of his Works, but he requested that his followers attribute his Works to Dr. Scott and not use his Works for commercial gain. The webpages on Dr. Scott's websites all contained notices expressing reservations of rights, and his Works displayed similar notices identifying Dr. Scott as the copyright owner.

---

[1]   See Doc's Dream, LLC v. Dolores Press Inc., et al., 15-cv-2857, Dkt. No. 132 (C.D. Cal. Mar. 1, 2018); Doc's Dream, LLC v. Dolores Press, Inc., 766 Fed. Appx. 467 (9th Cir. 2019).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 15-02562 PA (PLAx) | Date | July 1, 2020 |
|---|---|---|---|
| Title | Dolores Press, Inc. v. Patrick Robinson, et al. | | |

When Dr. Scott died in 2005, he conveyed his copyright interests, including those he held in his Works, to defendant Melissa Scott. Melissa Scott continued the licensing agreement with Dolores Press. Shortly after Dr. Scott's death, several individuals began to download Dr. Scott's works from his websites. Melissa Scott then deactivated the video on demand function of the websites.

In 2014, defendant Patrick Robinson, a Georgia minister and sole owner of Doc's Dream sought permission to share Dr. Scott's Works with his students online. When Melissa Scott refused his request, Robinson launched a website sharing Dr. Scott's works in order "to stick it to the devil" and "get the ball rolling in this legal battle."

Initially, the parties filed four actions. In three of the lawsuits, Dolores Press and Melissa Scott alleged Defendants infringed their copyright interests in Dr. Scott's Works. In the fourth, Doc's Dream sought a declaratory judgment that Dr. Scott had abandoned any copyright in his Works before his death. All of these actions have since been consolidated before this Court.

On March 1, 2018, the Court granted summary judgment in favor of Melissa Scott and Dolores Press on Doc's Dream's claim that Dr. Scott had abandoned any copyright protection in his Works before his death. See Doc's Dream, LLC, 15-cv-2857, Dkt. No. 132. In that Order, the Court found Dr. Scott did not abandon the "entirety" of his copyright interest in the Works as Doc's Dream alleged. (Id. at 4.) The Court noted that while "it may be true that Dr. Scott waived some aspect of the rights afforded by his copyright interest by making the Works available online," that "is not the case that [Doc's Dream] ma[de] in its First Amended Complaint." (Id.) Instead, Doc's Dream "claim[ed] Dr. Scott abandoned his copyright interest in the Works." (Id.)

On appeal, the Ninth Circuit affirmed. Doc's Dream, 766 Fed. Appx. at 473. The Ninth Circuit noted that "Doc's Dream's theory of abandonment shifted during the summary judgment proceedings." Id. "Initially, its position was that Dr. Scott (the author of the [W]orks), abandoned all of his rights under copyright law." Id. The Ninth Circuit found "[t]hat position was well refuted by evidence that Dr. Scott during his life was consistent (and adamant) in asserting copyright protections in his works." Id. "Doc's Dream then changed its theory by claiming that a *limited* abandonment (what Doc's Dream calls a 'Naked License') occurred." Id. (emphasis in original). "Under Doc's Dream's narrowed theory, Dr. Scott abandoned the right to control non-commercial dissemination of his works by allowing the public to view his works on the Internet, while retaining other rights afforded by the Copyright Act." (Id.) The Ninth Circuit found "the district court did not err in refusing to entertain Doc's Dream's limited abandonment theory, which was raised for the first time during the summary judgment briefing." (Id.) The Ninth Circuit "affirm[ed] the grant of summary judgment in favor of Dolores Press and [Melissa] Scott on Doc's Dream's claim of complete abandonment without reaching the merits of the theory of a limited abandonment." (Id.)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 15-02562 PA (PLAx) | Date | July 1, 2020 |
|---|---|---|---|
| Title | Dolores Press, Inc. v. Patrick Robinson, et al. | | |

Defendants now argue Dr. Scott partially abandoned certain copyright protections in his Works. In addition, Defendants seek summary judgment on their affirmative defenses of: (1) equitable estoppel and (2) copyright misuse.

## II.     Evidentiary Objections

As a preliminary issue, the Court declines to consider Plaintiffs' 274 boilerplate objections to almost all of the evidence submitted by Defendants. (See Dkt. No. 151-2.) The Court's scheduling order specifically instructs the parties "not to submit boilerplate objections to the opponent's statements of undisputed fact" and that "these will be disregarded and overruled." (See Dkt. No. 129 at 8.) Both parties are warned for the final time that further efforts to unnecessarily multiple these proceedings will subject the offending party to the imposition of sanctions.

In addition, even if the Court were to consider and overrule every one of Plaintiffs' 274 objections, the motion would still be resolved in Plaintiffs' favor because Defendants' evidence is not sufficient for the Court to rule as a matter of law in favor of Defendants.

## III.     Legal Standard

Summary judgment is proper where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). The moving party has the burden of demonstrating the absence of a genuine issue of material fact for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986). "[T]he burden on the moving party may be discharged by 'showing' - that is, pointing out to the district court - that there is an absence of evidence to support the nonmoving party's case." Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986); see also Musick v. Burke, 913 F.2d 1390, 1394 (9th Cir. 1990). The moving party must affirmatively show the absence of such evidence in the record, either by deposition testimony, the inadequacy of documentary evidence, or by any other form of admissible evidence. See Celotex, 477 U.S. at 322. The moving party has no burden to negate or disprove matters on which the opponent will have the burden of proof at trial. See id. at 325.

As required on a motion for summary judgment, the facts are construed "in the light most favorable to the party opposing the motion." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). However, the nonmoving party's allegation that factual disputes persist between the parties will not automatically defeat an otherwise properly supported motion for summary judgment. See Fed.R.Civ.P. 56(c). A "mere 'scintilla' of evidence will be insufficient to defeat a properly supported motion for summary judgment; instead, the nonmoving party must introduce some 'significant probative evidence tending to support the complaint.'" Fazio v. City & County of San Francisco, 125 F.3d 1328, 1331 (9th Cir. 1997) (quoting Anderson, 477 U.S. at 249, 252). Otherwise, summary judgment shall be entered.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 15-02562 PA (PLAx) | Date | July 1, 2020 |
|---|---|---|---|
| Title | Dolores Press, Inc. v. Patrick Robinson, et al. | | |

**IV.     Analysis**

      **A.     Partial Abandonment**

Defendants do not dispute that Dr. Scott has a valid copyright in the Works. Defendants instead argue that Dr. Scott partially abandoned his copyright in the Works at issue. More specifically, Defendants argue Dr. Scott partially abandoned his copyright interest in the Works with respect to the Works' "reproduction, distribution, and display on the Internet." (Mot. at 2-3.) Defendants state that "Dr. Scott encouraged the download reproduction, and redistribution of his Works, but requested that his followers attribute the Works to Dr. Scott and not use the Works for commercial gain." (Id. at 4.) Defendants "do not argue that [Dr. Scott] abandoned all rights to his Works, only those rights associated with the free reproduction, distribution and display of the Works on the Internet." (Id.) Defendants argue Plaintiffs are now suing "all members that have the temerity to freely distribute the Works - even though it is indisputable that said members of the public, like Defendants, acquired the Works with [Dr. Scott's] blessings and encouragement." (Id. at 7.)

In response, Plaintiffs first argue there is no partial abandonment defense. Second, Plaintiffs argue "[t]he evidence is clear that Dr. Scott never intended to abandon his copyrights." (Opp. at 23.) Plaintiffs allege "it was Dr. Scott's practice to affix copyright notices to each and every one [of] his programs, sermons, works, and teachings, no matter the medium in which the work was fixed." (Id. (Salas Decl.[2/] ¶ 6.) "Furthermore, Dr. Scott's website contained a copyright notice on each webpage that expressly stated: 'All Rights Reserved.'" (Id.). Finally, Plaintiffs argue many of the works at issue "were never even posted online." (See Opp. at 18; see also Id. at 16 ("Another reason is that Defendants stand accused of infringing Works that were never posted on the Internet, which Defendants obtained through BitTorrent and other piracy vehicles. Their argument offers nothing in defense of that set of infringements, a fact that conclusively defeats summary judgment."); Salas Decl. ¶ 15 ("I have reviewed the list of infringed works set forth in Exhibit A to the First Amended Complaints, and compared that list to the records of Dolores Press and the Church of Works posted on the Internet. Many of the Works that are the subject of this action were never posted on the Internet in any form.").)

"Copyright infringement claims have two basic elements: (1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." Doc's Dream, LLC, 766 Fed. Appx. at 470 (citing Seven Arts Filmed Entm't Ltd. v. Content Media Corp. PLC, 733 F.3d 1251, 1254 (9th Cir. 2013); see also 4 Melville B. Nimmer & David Nimmer, Nimmer on Copyright § 13.01 (Matthew Bender, rev. ed. 2017) ("Reduced to most fundamental terms, there are only two elements necessary to the plaintiff's case in an infringement action: ownership of the copyright by the plaintiff and copying by the defendant.").

---

[2/]    Erik Salas was a regular attendee of Wescott Christian Center, was hired by Dolores Press in 1999, and is currently the Director of Operations for Dolores Press. (Id. ¶¶2-5.)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 15-02562 PA (PLAx) | Date | July 1, 2020 |
|---|---|---|---|
| Title | Dolores Press, Inc. v. Patrick Robinson, et al. | | |

Like most assets, "ownership of a copyright may be transferred in whole or in part by any means of conveyance." 17 U.S.C. §201(d)(1). Any copyright transfer must be made in writing, id. § 204(a), except for a nonexclusive license, id. § 101, which may be granted orally or implied by conduct. Effects Associates, Inc. v. Cohen, 908 F.2d 555, 558 (9th Cir. 1990).

Copyright may also be abandoned if the owner "performs some overt act indicating an intention to abandon." Micro Star v. Formgen Inc., 154 F.3d 1107, 1114 (9th Cir. 1998). "Abandonment of copyright (sometimes referred to as waiver) . . . constitutes an effective defense in an infringement action." Taylor Holland LLC v. MVMT Watches, Inc., 15-cv-03578, 2016 WL 6892097, at *9 (C.D. Cal. Aug. 11, 2016). Abandonment "must be manifested by some overt act indicative of a purpose to surrender the rights and allow the public to copy." Id. (citing Hampton v. Paramount Pictures Corp., 279 F.2d 100, 104 (9th Cir. 1960). Abandonment has two essential elements: (1) an intent to surrender all rights in the work; and (2) an overt act evidencing that intent.

The Ninth Circuit has stated that a copyright owner can abandon some rights without abandoning all rights. See Micro Star v. FormGen Inc., 154 F.3d 1107, 1114 (9th Cir. 1998) ("Given that [FormGen] overtly encouraged players to make and freely distribute new levels, FormGen may indeed have abandoned its exclusive right to do the same. But abandoning some rights is not the same as abandoning all rights, and FormGen never overtly abandoned its rights to profit commercially from new levels."); see also Interscope Records v. Time Warner, Inc, 10-cv-01662, 2010 WL 11505708, at * (C.D. Cal. June 28, 2010) ("[A]bandonment of rights in certain copyrighted work does not, without more, act as a blanket waiver of abandonment of rights to others."); Blizzard Entertainment, Inc. v. Lilith Games (Shanghai) Co. Ltd., 15-cv-04084, 2017 WL 2118342, at *2 (N.D. Cal. May 16, 2017) ("Abandonment, like a transfer, may be made in whole or in part.").

Here, the Court cannot conclude as a matter of law based on the evidence before it that Dr. Scott partially abandoned his copyright interest to the extent suggested by Defendants. For example, the Court cannot conclude based on the evidence before it that, because Dr. Scott posted his Works for free on his own website, he abandoned any right to assert his copyright interest and prevent others from posting his Works on their own websites. In addition, the Court finds there is a triable issue of fact as to whether some of the Works at issue were never published for free on Dr. Scott's websites. Thus, the Court denies Defendant's Motion for Summary Judgment as to Defendants' partial abandonment theory.

      **B.**      **Equitable Estoppel**

Equitable estoppel is a defense to copyright infringement. Kramer v. From the Heart Prods., Inc., 300 Fed. Appx. 555, 556 (9th Cir. 2008). Equitable estoppel is intended to prevent parties from taking advantage of the law where a party "has so conducted [itself] that it would be contrary to equity and good conscience" to permit the party to prevail. Granite State Ins. Comp. v. Smart Modular Techs., Inc., 76 F.3d 1023, 1027 (9th Cir. 1996). "To establish the defense of estoppel, four elements must be present: (1) the plaintiff must know the facts underlying the defendant's alleged infringement, (2) the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 15-02562 PA (PLAx) | Date | July 1, 2020 |
|---|---|---|---|
| Title | Dolores Press, Inc. v. Patrick Robinson, et al. | | |

plaintiff must intend the defendant to rely upon the plaintiff's conduct or must act in a way that gives the defendant the right to believe plaintiff intended reliance, (3) the defendant must be ignorant of the true facts, and (4) the defendant must rely on the plaintiff's conduct to its detriment." Fahmy, 2013 WL 4500435, at *12.

Defendants argue that "for over nine years [Dr. Scott] made the Works freely available on the Internet for the consuming public to download, reproduce, display, perform and distribute, [and] he systematically encouraged the public to do so." (Mot. at 21.) Defendants further argue that "during [Dr. Scott's] lifetime he never sued any member of the consuming public for the conduct that he openly encouraged," and that it "was not until his successor in interest, Ms. Scott, hijacked his ministry after [Dr. Scott's] death, and began substituting her voice for his, that the copyright infringement suits, similar to the laundry list of suits promulgated against Defendants herein, commenced." Id.

Here, the Court cannot conclude that Defendants are entitled to judgment in their favor as a matter of law as to Defendants' equitable estoppel defense. According to the undisputed facts, in 2014 defendant Patrick Robinson, the sole owner of defendant Doc's Dream, requested permission to share Dr. Scott's works with his students online. See Doc's Dream, 2020 WL 2464928, at *2. After Melissa Scott refused his request and asserted her copyright interest in the Works, Patrick Robinson launched a website sharing Dr. Scott's works in order to "stick it to the devil" and "get the ball rolling in this legal battle." Id. Because at least two of the defendants knew of the asserted copyright, and posted the Works on their website despite this knowledge, it cannot be said as a matter of law, that Defendants relied to their detriment on Plaintiffs' conduct. See Bangkok Broadcasting & T.V. Co., Ltd. v. IPTV Corp., 742 F. Supp. 2d 1101, 1116 (C.D. Cal. 2010) (denying summary judgment on the defendants' equitable estoppel defense finding the fact that the plaintiffs never did anything to stop the defendants from distributing the plaintiff's television program for several years did not amount to knowledge or permission to copy or distribute, and "the evidence establish[ed] that [the plaintiff] sent multiple notices indicating that it objected to [the defendant's] copying and/or distribution of it copyrighted programs at issue.") Therefore, the Court denies Defendants' Motion for Summary Judgment as to Defendants' equitable estoppel defense.

    **C.**    **Copyright Misuse**

"Copyright misuse is a judicially crafted affirmative defense to copyright infringement." Apple Inc. v. Psystar Corp., 658 F.3d 1150, 1157 (9th Cir. 2011). The purpose of the defense is to prevent "holders of copyrights from leveraging their limited monopoly to allow them to control areas outside the monopoly." Id. (internal quotations omitted). Copyright holders may "use their limited monopoly to leverage the right to use their work on the acceptance of specific conditions" but they may not "[use] the conditions to stifle competition." Id.

In support of their defense of copyright misuse, Defendants argue "Plaintiffs viewed Defendants as potential competitors in the use of [the Works] and therefore attempted to eliminate the competition

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 15-02562 PA (PLAx) | Date | July 1, 2020 |
|---|---|---|---|
| Title | Dolores Press, Inc. v. Patrick Robinson, et al. | | |

by using the Copyright Act, not to seek infringement damages, but rather to deny Defendants their First Amendment rights to free speech, and thereby silence competition." (Mot. at 23.) Defendants further state there is "ample additional evidence of Plaintiff's copyright misuse beyond the contours of this case," and that Plaintiffs' "attempt at eliminating the competition by using the Copyright Act flies in the face of U.S. antitrust laws." (Id.) Defendants do not put forth any of this supposed "ample evidence."

The Court finds there is insufficient evidence to establish that, as a matter of law, Plaintiffs engaged in copyright misuse. Defendants do not allege that Plaintiffs were using the copyrighted Works to "prevent the development of competing products," but rather allege that the copyright prevented Defendants from using the copyrighted Works themselves - precisely what a copyright protection is meant to do. See Oracle America, Inc. v. Hewlett Packard Enterprise Co., 16-cv-01393, 2017 WL 635291, at *4 (N.D. Cal. Feb. 16, 2017). Nor do Defendants' allegations suggest that Plaintiffs were "leveraging [their] monopoly to allow [them] to control areas outside [their] monopoly." Id. (citing Apple, 658 F.3d at 1157). Defendants simply suggest that Plaintiffs chose to enforce their monopoly after they had allegedly been failing to do so. "These allegations do not show the competitive injury that the copyright misuse defense is intended to address." Id.

### Conclusion

For the foregoing reasons, the Court denies Defendant's Motion for Summary Judgment.

IT IS SO ORDERED.